### A05A1681. COPELAND v. THE STATE.
(625 SE2d 100)

MIKELL, Judge.

Dana Troy Copeland appeals his conviction for child molestation, arguing that the trial court erred by admitting his prior child molestation conviction as a similar transaction and that his trial counsel was ineffective. We affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[1] In this regard, we neither weigh the evidence nor assess witness credibility; rather, we determine whether "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."[2] Construed in favor of the verdict, the evidence shows that in 1993, Copeland pled

[1] (Punctuation and footnote omitted.) *Dean v. State*, 252 Ga. App. 204 (555 SE2d 868) (2001).

[2] (Footnote omitted.) *Reece v. State*, 241 Ga. App. 809 (527 SE2d 642) (2000).

guilty to eight counts of child molestation and was sentenced to seven years in prison and ten on probation. On October 23, 1999, Copeland was released on probation. Soon thereafter, he contacted his cousin, Lisa Henderson, and began spending time with her family. At that time, Henderson lived with her three children, the victim herein, R. H., who was twelve years old at the time, and her two daughters, who were eleven and nine years old, respectively.

Henderson testified that initially she was comfortable with the amount of time that Copeland spent with her children. However, after Copeland began to call her home regularly and bought her kids an excessive number of gifts at Christmas and thereafter, she became uneasy. Henderson recalled that Copeland gave R. H. a credit card with a $500 limit. R. H. told his mother that Copeland had instructed him to use the card only when they were together. When Henderson called Copeland to ask about the card, he told her that it had not been activated and that he gave it to R. H. to make him more responsible.

Henderson testified that Copeland told her that he had been convicted because of a sexual relationship with a 17-year-old girl whose parents were racially motivated to press charges against him. However, in October 2000, she learned from the internet that Copeland had been convicted of child molestation. Henderson then asked her children if Copeland had behaved inappropriately with them, at which point, R. H. asked that his sisters leave the room. R. H. told her that Copeland had made a sexual remark to him, had undressed once in his presence, that he had awakened one night to find that his underwear was pulled down, and that Copeland was lying on him with his penis touching R. H.'s rear end.

Henderson testified that she called Copeland that night, demanded that he turn himself in, and threatened to call the police. On that next day, she called Copeland's probation officer and the DeKalb County police and took R. H. to the Georgia Center for Children. At the center, R. H. was interviewed on videotape. A redacted version of the interview was played for the jury. Henderson also testified that Copeland had violated his probation by living with at least three women who had small children.

R. H. testified that in 2000, Copeland spent virtually every weekend with R. H.'s family. He recalled that he began to feel uncomfortable with Copeland when he accidentally poked Copeland with a stick while playing, and Copeland told him that it felt like "a dick going up his butt." R. H. also recounted the incident where he awoke to find Copeland lying on him. R. H. testified that he did not tell his mother immediately because he was embarrassed, but that he told her about it when she specifically asked about Copeland's conduct.

Copeland testified and denied each of the incidents described by R. H. and Henderson. He further testified that he bonded with R. H. because he thought that Henderson abused the boy, and Copeland had been abused by his mother; that he purchased gifts for Henderson's children and gave R. H. money and the deactivated credit card; that he knew that one of the terms of his probation was that he was not permitted to live with children under the age of 16; and that he had not violated that term of his probation but had used the address of a person who had kids under the age of 16. On cross-examination, Copeland maintained that Henderson called the police in order to prevent him from reporting her abusive conduct to child protective services. On rebuttal, Leseall Whetstone, who lived in the same apartment complex with Henderson when the incident occurred, testified that Copeland lived with young children and that she had never observed Henderson engage in any type of questionable behavior in her dealings with R. H.

1. In his first enumerated error, Copeland argues that the trial court erroneously admitted his 1993 conviction as a similar transaction. "A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion."[3] We find no such abuse here.

Generally, evidence of prior crimes committed by a defendant is inadmissible, but exceptions to this rule have developed allowing the admission of such evidence for limited purposes, such as to show identity, plan, scheme, bent of mind, or course of conduct.[4]

> The exception to the general rule . . . has been most liberally extended in the area of sexual offenses: In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.[5]

In order to establish the admissibility of similar transaction evidence, the state is required to make the three affirmative showings outlined in *Williams v. State*:[6] "First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must

---

[3] (Citations omitted.) *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998).
[4] *Spinks v. State*, 204 Ga. App. 249, 250 (1) (419 SE2d 108) (1992).
[5] (Citation omitted.) *Leaptrot v. State*, 272 Ga. App. 587, 596 (3) (612 SE2d 887) (2005).
[6] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter."[7]

In this case, the state indicated that it sought to introduce the 1993 conviction to show Copeland's course of conduct, lustful disposition and bent of mind in dealing with children, which are appropriate purposes for the introduction of the evidence.[8] Copeland admitted that he committed the acts of child molestation for which he was convicted in 1993. Finally, on the issue of similarity, "this court has held that the sexual molestation of young children, regardless of sex or type of act, is sufficient similarity to make the evidence admissible."[9] Accordingly, the similar transaction evidence was properly admitted.

Copeland's argument that the conviction should not have been admitted because it was too remote in time does not warrant a different result. "Where, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion."[10]

2. Copeland asserts three grounds of ineffectiveness against his trial counsel: (a) he failed to investigate his case and adequately prepare his defense; (b) he did not request a limiting instruction contemporaneously with the admission of his prior conviction; and (c) he conceded during closing argument that he had violated his probation. "[I]n order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial."[11] Furthermore, "[a] court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one, . . . [and its] finding of effectiveness must be upheld unless clearly erroneous."[12] Because Copeland has failed to make the required showings, this enumeration fails.

(a) Copeland argues that his trial counsel was ill-prepared to defend him and only visited him once while he was incarcerated.

---

[7] (Citation omitted.) *Houston v. State*, 270 Ga. App. 456, 458 (1) (606 SE2d 883) (2004).

[8] *Goins v. State*, 257 Ga. App. 406, 408 (3) (571 SE2d 195) (2002).

[9] (Citations and punctuation omitted.) *Jackson v. State*, 198 Ga. App. 447, 448 (1) (402 SE2d 279) (1991).

[10] (Footnote omitted.) *Hogan v. State*, 272 Ga. App. 19, 22 (1) (611 SE2d 689) (2005) (eight years). See also *Nichols v. State*, 221 Ga. App. 600, 601-602 (3) (473 SE2d 491) (1996) (24 and 27 years).

[11] (Citations omitted.) *Butler v. State*, 273 Ga. 380, 384 (10) (541 SE2d 653) (2001).

[12] (Citations and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

Copeland also maintains that trial counsel was ineffective because he failed to obtain a tape of a telephone call between Copeland and Denise Hill, wherein she told him that Henderson told her that Copeland had not acted inappropriately with R. H. We disagree.

Trial counsel testified that he became involved in the case prior to indictment and filed several pretrial motions; that he only visited Copeland once but they frequently corresponded by letters and had many phone calls; that he also discussed the case with Copeland during several calendar calls; that he shared discovery from the state with Copeland; and that his investigator spoke with the state's witnesses. Copeland has not shown that trial counsel was inadequate in his preparation simply because he only visited Copeland once.[13]

Regarding Hill, trial counsel testified that he and his investigator spoke with her and that she refused to disclose her address, said that she did not really know Copeland and that she would have never allowed him to be around her or her children. Trial counsel also testified that Copeland's testimony about a taped phone call at the hearing on the motion for new trial was the first he had ever heard of a tape. The trial court was authorized to believe trial counsel's testimony as opposed to Copeland's.[14] Thus, this claim of error fails.

(b) Next, Copeland argues that trial counsel was ineffective for failing to request a contemporaneous limiting instruction on similar transaction evidence when the state introduced Copeland's prior conviction. Trial counsel admitted that he did not request the instruction but testified that he should have requested it and that his failure to do so was not a strategic decision. Nonetheless, the trial court gave a limiting instruction on similar transaction evidence in its final charge to the jury. Therefore, even if trial counsel's performance were deficient in this regard, Copeland has not shown that but for this deficiency, the outcome of his trial would have been different.[15] As both showings are required, this claim of ineffectiveness fails as well.

(c) In his last ineffectiveness claim, Copeland objects to the following statement made by trial counsel during closing argument:

They have proved beyond a reasonable doubt that [Copeland] violated his probation. The two witnesses this morning, sufficient. But that's the kind of evidence that's required. So he has violated his probation. He has got to go to Gwinnett County. He is probably going to have to pay for

---

[13] See *Mack v. State*, 242 Ga. App. 256, 257 (2) (a) (529 SE2d 393) (2000) (counsel's representation was not deficient merely because of the number of visits with the defendant prior to trial).

[14] *Curry v. State*, 238 Ga. App. 511, 522 (5) (b) (519 SE2d 269) (1999).

[15] *Burgess v. State*, 278 Ga. 314, 316 (2) (602 SE2d 566) (2004).

violating his probation. But he is not on trial here for violating his probation.

Copeland argues that trial counsel was ineffective because he conceded that Copeland violated his probation. We disagree.

As a condition of his probation, Copeland was prohibited from having unsupervised contact with children under 16 years of age. The state's two rebuttal witnesses, Whetstone and her 13-year-old daughter, L. C., both testified that Copeland had spent time alone with L. C. At the hearing on the motion for new trial, Copeland's trial counsel testified that he and Copeland had agreed that Copeland would testify that he violated this term of his probation.

"Attorneys are allowed considerable latitude in making closing argument, and they may draw any inference from the evidence so long as that inference is both reasonable and legitimate."[16] Copeland's trial counsel's overall theory of defense was that Copeland did not molest R. H. It appears that the theory behind trial counsel's statement about the probation violation was that the state's evidence sufficiently proved the violation, even though Copeland was not on trial for the violation, but the state had not proven the charge at hand. This theory is not patently unreasonable.[17]

> Trial strategy and tactics do not equate with ineffective assistance of counsel. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that defendant and his present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate.[18]

Accordingly, we find that trial counsel did not render ineffective assistance to Copeland.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED DECEMBER 13, 2005.

*Virginia W. Tinkler*, for appellant.

---

[16] (Footnote omitted.) *Kelly v. State*, 242 Ga. App. 30, 34 (5) (528 SE2d 812) (2000).

[17] See *Cornelius v. State*, 273 Ga. App. 806, 809 (2) (a) (616 SE2d 148) (2005).

[18] (Citation and punctuation omitted.) *Gillison v. State*, 254 Ga. App. 232, 235 (4) (a) (561 SE2d 879) (2002).

*Gwendolyn Keyes Fleming, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.